### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHALESHA WRIGHT, : | |
| : | |
| *Plaintiff*, : | Civil Action No.:   2:21-cv-621 |
| : | |
| v. : | |
| : | |
| PACKERS SANITATION : | |
| SERVICES, INC., LTD. D/B/A PSSI, : | |
| : | |
| *Defendant*. : | |

## **COMPLAINT**

AND NOW, comes the Plaintiff, Shalesha Wright, by and through her undersigned counsel, Sean A. Casey, Esquire, and files the following Complaint:

### Nature of the Action

This is an action brought pursuant to sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1), Pennsylvania Human Relations Act (PHRA), retaliation under the various statutes, and creation of a hostile work environment. The Plaintiff, Shalesha Wright, seeks declaratory, injunctive and compensatory relief for the discriminatory conduct, hostile work environment, retaliation and termination of her position by the Defendant in this matter.

### Parties

1. Plaintiff, Shalesha Wright, is a black female individual that is fifty-four (54) years of age, and currently residing at 1337 Taylor Avenue, New Kensington, PA 15068.

2. At all times relevant hereto, the Plaintiff was a qualified individual, and otherwise possessed of all qualifications necessary to perform the essential functions of the job.

3. Defendant, Packers Sanitation Services, Inc., Ltd., d/b/a/ PSSI, is an employer within the meaning of the Act, with a corporate office located at 3681 Prism Lane, Kieler, WI 53812.

**Jurisdiction**

4. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1331, relating to federal questions. Supplemental jurisdiction over the related state law claims is conferred by 28 U.S.C. §1367(a).

5. Venue is proper in this case pursuant to 28 U.S.C. §1391(b).

**Statements of Fact**

6. The Plaintiff, Shalesha Wright, was hired as a cleaner with the Defendant, Packers Sanitation Services, Inc., Ltd., d/b/a/ PSSI (hereinafter referred to as "PSSI"), on or about July 20, 2017.

7. The Plaintiff had a good work performance while employed for the Defendant and was not aware of any write-ups in her file.

8. In or about November of 2018, the Plaintiff's site manager, Michael Harris, offered her the position of ERP coordinator, as the current ERP coordinator, a Kyla, was being transferred to Philadelphia.

9. In early December of 2018, the Plaintiff began training with the current ERP coordinator.

10. In late December of 2018, the prior ERP coordinator, that had been training the Plaintiff, was transferred to a company in Philadelphia and the Plaintiff handled all of the ERP coordinator duties.

11. The Plaintiff completed emails and paperwork to the company that included her signature as the ERP coordinator.

12. The Plaintiff also notes having received the PSSI company email to send out emails, and was provided the password for PSSI company information, and given the safe code.

13. The Plaintiff recalls that her site manager, Michael Harris, was to complete paperwork with her to send to corporate completing the official naming of the Plaintiff as the ERP coordinator, but this was not completed due to the former ERP coordinator returning after things did not work out with the company she was transferred to in Philadelphia.

14. The Plaintiff continued performing ERP coordinator duties for approximately two additional weeks, and then was returned to her original position.

15. The Plaintiff at that time confirmed with her site manager, Michael Harris, that she would still take over the ERP coordinator position when it became available again.

16. In or around January of 2019, the site manager, Michael Harris, stood at the podium in the trailer and announced in front of at least twenty (20) employees that Kyla had returned and would be handling the ERP coordinator duties, and when she left the Plaintiff would be the new ERP coordinator.

17. In or around April of 2019, the Plaintiff began enduring unwanted sexual advances from her supervisor, Stephen Raeford, which continued into the summer of 2019.

18. The Plaintiff finally advised Raeford that she was a lesbian and had no interest in him.

19. In June of 2019, the Plaintiff was in the office with Kyla and Raeford, and she was informed that Kyla would be leaving soon.

20. It was at that time that Raeford instructed the Plaintiff that she would need to find her own replacement and train them prior to being able to train with Kyla for the ERP coordinator position.

21. The Plaintiff found this extremely unusual as it was not a company practice with the Defendant.

22. Though the Plaintiff had never seen or heard of another employee having to locate their own replacement, she attempted to find someone in need of a job to apply for her position as a cleaner, so then she could take the ERP coordinator position again.

23. The Plaintiff knew of a friend that needed a job, Shatiza Jackson, and she contacted her explaining she was going to be training for a new position, but was instructed to find her replacement first for her current job duties as a cleaner.

24. Based on the Plaintiff's description of her job duties as a cleaner, Ms. Jackson agreed to apply for the position.

25. When the Plaintiff arrived to work that evening, she informed Kyla and her supervisor, Stephen Raeford, that she had found her replacement as she was instructed to do in order to start training as ERP coordinator again.

26. Ms. Jackson began working for the Defendant, but was sent to work in a different area than the Plaintiff, thus never training to takeover the Plaintiff's position.

27. Ms. Jackson did not like the area she was sent to work in, and eventually quit her employment, as she had accepted employment with the Defendant on the basis of taking over the Plaintiff's position.

28. It was the supervisor, Stephen Raeford, who assigned Ms. Jackson to a different work area, when he knew she had been hired to train with the Plaintiff for her position, which would have allowed the Plaintiff to begin training as the ERP coordinator again.

29. At that the time, Plaintiff's supervisor, Stephen Raeford, began making comments to harass the Plaintiff regarding her friend quitting and the Plaintiff not being able to train for the ERP coordinator position.

30. The Plaintiff felt harassed and unequally treated, as to her knowledge no other employees were required to find their own replacements.

31. Plaintiff witnessed male employees promoted, while she was still waiting to be able to train for ERP coordinator position and said male employees did not have to find their replacements prior to being moved to their new positions.

32. In or around the end of June of 2019, the Plaintiff noticed a new employee with Kyla, and discovered that Kyla was training the new employee to take over the job as ERP coordinator.

33. The Plaintiff was informed by Kyla that she was unsure why she was training the new employee for the ERP coordinator position and not the Plaintiff.

34. The Plaintiff discovered that the new employee was the Raeford's sister-in-law.

35. On or about August 5, 2019, Plaintiff contacted Defendant's human resources department to report the unprofessional situation and the discriminatory and retaliatory treatment she had been receiving.

36. Approximately one (1) week after making a formal complaint to corporate, the Plaintiff was terminated.

37. The Plaintiff was terminated on or about August 13, 2019.

38. The Plaintiff was terminated by an area manager, named Jeremy, stating the reason for said termination was due to her not punching out for a break.

39. The Plaintiff explained to the area manager that none of the employees are able to punch out for breaks, due to the equipment only recognizing punching in and out for the start and end of work shifts.

40. The Plaintiff continued to explain the protocol has always been to notify the manager on site when she was taking a break.

41. The Plaintiff believes her complaint to corporate was dismissed and is unaware of the Defendant conducting any type of investigation regarding the same.

42. After being terminated the Plaintiff was informed there were write-ups in her file, which she was never informed of while employed for two (2) years for the Defendant, and she believes said write-ups were falsified by Raeford.

43. On or about December 10, 2019, the Plaintiff filed a Charge with the EEOC for sex discrimination under Title VII of the Civil Rights Act and retaliation.

44. On or about February 11, 2021, a Dismissal and Notice of Right to Sue was issued by the EEOC. (Exhibit 1)

### Count 1: Sex Discrimination: Title VII and PHRA

45. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

46. Plaintiff is a gay, black female individual, one of the few gay employees employed with the Defendant.

47. Plaintiff was clearly and repeatedly treated differently than other similarly situated male employees.

48. Defendant did not address or investigate the discriminatory conduct that was occurring in the workplace, and by implication created the environment that seemingly condoned such conduct.

49. There were numerous instances of discriminatory sex related conduct and harassment, with nothing done to change the work environment that was allowing this to happen.

50. Defendant violated Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act, by dismissing and refusing to investigate the allegations by Plaintiff, that her manager was discriminatory towards her, by allowing actions to continue the hostile and discriminatory treatment throughout the Plaintiff's employment, to ultimately allow Plaintiff's superiors to continue a method of conduct designed to harass and intimidate the Plaintiff, and ultimately terminating her from her position.

51. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in her community and place of business, punitive damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.


47. Plaintiff was clearly and repeatedly treated differently than other similarly situated male employees.

48. Defendant did not address or investigate the discriminatory conduct that was occurring in the workplace, and by implication created the environment that seemingly condoned such conduct.

49. There were numerous instances of discriminatory sex related conduct and harassment, with nothing done to change the work environment that was allowing this to happen.

50. Defendant violated Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act, by dismissing and refusing to investigate the allegations by Plaintiff, that her manager was discriminatory towards her, by allowing actions to continue the hostile and discriminatory treatment throughout the Plaintiff's employment, to ultimately allow Plaintiff's superiors to continue a method of conduct designed to harass and intimidate the Plaintiff, and ultimately terminating her from her position.

51. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in her community and place of business, punitive damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## Count 2: Retaliation: Title VII and PHRA

52. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

53. Plaintiff was harassed, humiliated, discriminated against, and terminated by the Defendant in retaliation for asserting her rights under Title VII of the Civil Rights Act and the PHRA, by raising the issues regarding the discriminatory actions by her supervisor.

54. Not only did the Defendant not take measures to correct the discriminatory nature, they terminated the Plaintiff in retaliation for her reporting the supervisor's behavior.

55. The Plaintiff exercised her rights and opposed discriminatory conduct prohibited by Title VII of the Civil Rights Act and the PHRA.

56. Under Title VII of the Civil Rights Act, a retaliatory action by an employer, towards an employee for exercising their statutory rights, is a violation of that statute and against public policy.

57. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in her community and place of business, punitive damages, declaratory and injunctive relief, attorney's fees and costs, adverse consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

### Count 3: Hostile Work Environment

58.     Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

59.     Plaintiff has repeatedly reported discrimination to the Defendant, to various agents employed by the Defendant.

60.     The Plaintiff's supervisor increasingly responded to her in a manner that was intensely hostile, with behavior that was verbally threatening.

61.     As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the academic community, punitive damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A) Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert and participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere with the exercise of rights and/or discriminate in violation of Title VII of the Civil Rights Act and the PHRA;

B) Order Defendant to institute and implement training programs, policies, and practices and programs designed to ensure the Defendant provides proper leave and does not retaliate and/or interfere with those who engage in statutorily protected activity;

C) Order Defendant to make whole Shalesha Wright, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, compensate her for lost benefits, and all other affirmative legal and equitable relief necessary to eradicate the effects of its unlawful employment practice;

D) Order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

E) Order Defendant to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by the Plaintiff in this matter;

F) Order Defendant to remove and expunge, or to cause to be removed or expunged, all negative, discriminatory, and/or defamatory memorandum or other documentation from the Plaintiff's record of employment; and

G) Award the Plaintiff such other legal and equitable relief as the Court deems appropriate and just.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted,

/s/ Sean A. Casey
Sean A. Casey
PA ID #79806
Email: sean@caseylegal.com

**SEAN A. CASEY, ATTORNEY AT LAW**
First & Market Building
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
T: (412) 201-9090
F: (412) 281-8481